STEPHENS PRODUCE CO., INC., and
Temple Stephens Company,
Petitioners,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 74–1837.

United States Court of Appeals,
Eighth Circuit.

Submitted April 14, 1975.

Decided May 9, 1975.

---

Alvin D. Shapiro, Kansas City, Mo., for petitioners.

Peter J. Carre, Atty., N. L. R. B., Washington, D. C., for respondent; Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Allison W. Brown, Jr. and David Miller, Attys., N. L. R. B., Washington, D. C., on the brief.

Before MATTHES, Senior Circuit Judge, and ROSS and WEBSTER, Circuit Judges.

ROSS, Circuit Judge.

This case comes before us on the petition for review of a National Labor Relations Board order filed by Stephens Produce Company, Inc. and Temple Stephens Company [hereinafter referred to as "the company"]. The Board has cross-applied for enforcement of the order which contains certain cease and desist requirements relating to unfair labor practices and which directs the company, upon request, to recognize and bargain with the Amalgamated Meat Cutters and Butcher Workmen of America, AFL–CIO, Local Union 576 as the representative of employees in its meat department. The company is located in Moberly, Missouri, and this Court has jurisdiction of this controversy under sections 10(e) and 10(f) of the National Labor Relations Act, 29 U.S.C. § 160(e) and (f).

The dispute involved herein arose out of a union organizational campaign among the company's meat department employees at its Moberly warehouse facility during 1973. After a lengthy hearing, an administrative law judge found that the company had engaged in certain unfair labor practices under section 8(a)(1), (3) and (5) of the Act, 29 U.S.C. § 158(a)(1), (3) and (5), during this time. The judge's findings, conclusions and recommended order were affirmed by a three-member panel of the Board.

Stephens Produce Company, Inc., and Temple Stephens Company are a single integrated enterprise. Temple Stephens Company warehouses and distributes food products in Moberly and operates retail food stores in that area. The produce company is located in the same warehouse in Moberly and is engaged in the processing and storing of meat, baked goods and dairy products. Its sole customer is the Temple Stephens Company.

During 1973 a union organizational campaign took place in the company's meat department. The union obtained signed authorization cards from a majority of the employees therein and demanded company recognition, which was refused. A strike ensued, during which the union filed unfair labor practice (ULP) charges against the company. For a short time the strikers returned to work under an agreement between the company and the union, but they subsequently walked out again because of alleged discrimination against them. The strike was still in progress in the fall of 1973 when the hearing was held on the ULP charges.

The findings that the company had engaged in unfair labor practices are based on certain controverted incidents which occurred during the organizational campaign and the strike. We need not delve deeply into the underlying factual background of these individual occurrences because the company does not, as such, assert that the Board's findings are not supported by substantial evidence. We add only that we have carefully reviewed the extensive record and are satisfied that there is substantial evidence therein to support the Board's decision.

Before this Court the company claims that it was denied a fair hearing by the Board because it was not allowed to subpoena and question the NLRB field investigator who had conducted the initial investigation of the ULP charges. Additionally, it is urged that the Board recognized an inappropriate bargaining unit

in the instant case. We enforce the Board's order.

## I.

There was, of course, a great deal of conflicting testimony at the hearing regarding the events surrounding the ULP charges. Recognizing that, ultimately, it would be a question of whose evidence was credited by the judge the company sought to impeach the Board's employee witnesses by suggesting that they had previously given statements to the field investigator which were contradictory to their testimony at the hearing. The company did this by asking each such witness on cross-examination whether he or she denied making any such statement to the investigator. They all did so. Then the company sought to subpoena the investigator, hoping that he would testify to the effect that such contradictory statements were made and that the Board's witnesses would thus be impeached.

The company's attempt was cut short, however, when the administrative law judge revoked the subpoena because the General Counsel had refused to allow the investigator to testify. The General Counsel, in turn, based his refusal to grant permission for the investigator to testify on the general policy that Board agents are not ordinarily allowed "to testify as witnesses with respect to matters relating to the Agency's investigative file." He went on to explain in a letter to the company's counsel dated September 14, 1973:

The reason for this policy is that the highly sensitive and delicate role of the Board Agent in investigating,

processing, and resolving unfair labor practice charges would be seriously impaired if a real likelihood existed of the Board Agent becoming a material witness in Board or Court proceedings with respect to evidence obtained while investigating an unfair labor practice charge.

However, while the investigator was not allowed to testify, the written statements given by the witnesses to the investigator were made available to the company for purposes of cross-examination.

There is a limited evidentiary privilege which protects the informal investigatorial and trial-preparatory processes of regulatory agencies such as the NLRB. United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941); Wellman Industries, Inc. v. N.L.R.B., 490 F.2d 427, 430 (4th Cir.), cert. denied, 419 U.S. 834, 95 S.Ct. 61, 42 L.Ed.2d 61 (1974); J. H. Rutter Rex Manufacturing Co. v. N.L.R.B., 473 F.2d 223, 231 (5th Cir.), cert. denied, 414 U.S. 822, 94 S.Ct. 120, 38 L.Ed.2d 55 (1973); N.L.R.B. v. Clement Brothers Co., 407 F.2d 1027, 1031 (5th Cir. 1969); 5 U.S.C. § 552(b)(7)(A); 8 J. Wigmore, Wigmore on Evidence § 2378, at 805–808 (McNaughton rev. 1961). It is clear that the General Counsel sought to invoke this privilege when refusing to allow the investigator to testify.[1] And we are satisfied that the investigatory interviews sought to be revealed by the company fall within the privilege because the testimony of the investigator would reflect nothing more than his informal impressions. J. H. Rutter Rex Manufacturing Co. v. N.L.R.B., *supra*, 473 F.2d at 234.

---

1. This fact partially distinguishes this case from N.L.R.B. v. Capitol Fish Co., 294 F.2d 868 (5th Cir. 1961), upon which the company relies heavily. As stated in J. H. Rutter Rex Manufacturing Co. v. N.L.R.B., 473 F.2d 223, 232–233 (5th Cir.), cert. denied, 414 U.S. 822, 94 S.Ct. 120, 38 L.Ed.2d 55 (1973), in *Capitol Fish*

[t]he Board's refusal to produce . . . was based solely on its own internal rule (§ 102.118) prohibiting the production of any Board documents without the written consent of the Board or the general counsel.

Since the only basis for withholding the documents was the self-created internal rule, which gave the Board unlimited ability to preserve secrecy, the courts wisely overruled the Board and required production.

Like *Rutter Rex*, however, the instant case is different because the Board has based its refusal to allow the testimony not simply on the internal rule, but, at least in part, on the established evidentiary privilege for the informal deliberations of all prosecutorial agencies and branches of the government. *Id.* at 233.

This does not end the inquiry, however, because the privilege for such investigatory processes is a very narrow one and need only be honored where the policy behind its invocation by the agency outweighs any necessity for the information shown by the party seeking it. J. H. Rutter Rex Manufacturing Co. v. N.L.R.B., *supra*, 473 F.2d at 235; 8 J. Wigmore, *supra*, § 2379, at 810–812. *Cf.* 4 J. Moore, Moore's Federal Practice ¶ 26.64[3], at 26–419–26–434 (2d ed. 1970).

The rationale enunciated by the General Counsel in support of his refusal to allow the investigator to testify is that general disclosure in Board or court proceedings of all interviews and conversations between employees and investigators would compromise the investigators' appearance of impartiality and would impair the function of the Board in investigating, processing and resolving unfair labor practice charges. This policy reason for invoking the privilege has been recognized as such by the Fifth Circuit. N.L.R.B. v. Clement Brothers Co., *supra*, 407 F.2d at 1031; Texas Industries, Inc. v. N.L.R.B., 336 F.2d 128, 134 (5th Cir. 1964).

■ However, we do not believe that the mere incantation of this stated policy is always necessarily sufficient to bring the privilege into effect. *See* J. H. Rutter Rex Manufacturing Co. v. N.L.R.B., *supra*, 473 F.2d at 234. In this case the claim of privilege was made by the General Counsel, and we are satisfied that the company has shown no substantial reason to disregard it. The company was given all of the formal written statements of the witnesses under the Board's version of its "Jencks rule." 29 C.F.R. § 102.118(b)(1) (1974). It was free to and, in fact, did utilize these documents in cross-examination of these Board witnesses. All these witnesses were available for cross-examination under oath. In short, in this civil proceeding the company had available to it everything that a criminal defendant normally has available to him with regard to the results of an official investi-

gation. *See* Palermo v. United States, 360 U.S. 343, 354, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); Jencks Act, 18 U.S.C. § 3500. The request to produce the investigator to rebut both the witnesses and their sworn statements borders on the ridiculous.

■ Additionally, there were no inconsistencies within the statements or between the statements and the witnesses' testimony which would indicate that the investigator had not accurately recorded the employees' oral expressions to him. Ultimately, therefore, the company here can assert nothing more than the mere surmise that Board witnesses had made earlier inconsistent statements which might be used to impeach them. This would not normally be sufficient to warrant the production of documents under the discovery rules. Hauger v. Chicago, Rock Island & Pacific R. R., 216 F.2d 501, 508 (7th Cir. 1954); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2025, at 226–227 (1970). And we do not believe it sufficient to overcome the limited or qualified privilege for the investigatory processes of regulatory agencies either. J. H. Rutter Rex Manufacturing Co. v. N.L.R.B., *supra*, 473 F.2d at 234–235.

■ We stress again that the privilege discussed herein is not a broad one and cannot be utilized by executive agencies to indiscriminately hide all nominally "investigatory materials" from public scrutiny. *See* 5 U.S.C. § 552(b)(7). However, where, as here, the privilege has been invoked, it takes something more than the mere hope or surmise that impeaching evidence will be found in the investigatory file or in the questioning of the agency investigator to overcome it. In light of the material which was made available to the company no prejudice was shown.

■ Attempting to bring this case more within the facts of N.L.R.B. v. Capitol Fish Co., 294 F.2d 868 (5th Cir. 1961), *see* note 1 *supra,* the company points to two offers of proof made by it at the hearing which, it is claimed, establish that the Board's investigator

might have engaged in improper questioning of employee-witnesses. It is suggested that he sought to influence the testimony of some of these individuals.

We have read the offers of proof tendered by the company carefully and are satisfied that they suggest stringent but not improper questioning and do not actually reflect an attempt to influence the answers received by the investigator. Rather, they simply show close questioning because of the fact that the investigator had previously been given conflicting evidence by other witnesses.

## II.

██ Under section 9(b) of the National Labor Relations Act, 29 U.S.C. § 159(b), the Board is accorded broad discretion in determining the appropriate bargaining unit. Allied Chemical Workers v. Pittsburgh Plate Glass Co., 404 U.S. 157, 171, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971); N.L.R.B. v. Crystal Tire Co., 410 F.2d 916, 919 (8th Cir. 1969).

> The issue as to what unit is appropriate for bargaining is one for which no absolute rule of law is laid down by statute, and none should be by decision. It involves of necessity a large measure of informed discretion, and the decision of the Board, if not final, is rarely to be disturbed.

Packard Motor Car Co. v. N.L.R.B., 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947). In short, the Board's determination should not be set aside unless it acted arbitrarily or capriciously. N.L.R.B. v. Bardahl Oil Co., 399 F.2d 365, 367 (8th Cir. 1968).

██ The record in this case does not reveal any such unreasonable decision. The employees in the company's meat room do jobs different than employees in other departments. They work in a separate area. They punch a separate time clock. They have a separate supervisor who has authority over them alone. The Board's finding that the meat department employees enjoy a separate and distinct community of interest is supported by substantial evidence and,

therefore, is conclusive. Allied Chemical Workers v. Pittsburgh Plate Glass Co., supra, 404 U.S. at 171, 92 S.Ct. 383; National Labor Relations Act § 10(e), 29 U.S.C. § 160(e).

For the foregoing reasons the company's petition for review is denied and the order of the Board is enforced.