Marianne THOMAS, Appellant (Plaintiff),

v.

Myron HARRISON, M. D., Appellee (One of Defendants),

Sweetwater County Memorial Hospital and James Hooker (Other defendants).

No. 5374.

Supreme Court of Wyoming.

Sept. 30, 1981.

Walter C. Urbigkit, Jr., and George A. Zunker, of Urbigkit & Whitehead, P.C., Cheyenne, for appellant.

Michael J. Sullivan and William F. Downes, of Brown, Drew, Apostolos, Massey & Sullivan, Casper, for appellee.

Before ROSE, C. J.,[a] and RAPER,[b] McCLINTOCK,[c] THOMAS and ROONEY, JJ.

ROONEY, Justice.

Appellant-plaintiff appeals from a judgment entered on a jury verdict which found appellee-defendant not negligent with reference to medical malpractice. The malpractice action was filed against appellee, against Sweetwater County Memorial Hospital, and against James Hooker, an employee of the hospital. It was premised on alleged negligence in the medical treatment afforded to appellant in connection with a

---

a.  Chief Justice as of January 5, 1981.

b.  Chief Justice at time of oral argument.

c.  Retired March 26, 1981, but continued to participate in the decision of the court in this case pursuant to order of the court entered March 30, 1981.

broken arm. A directed verdict was entered in favor of the hospital and James Hooker.

Appellant words the issues on appeal as follows:

"A. Whether the trial court erred in ruling that *reports by Dr. Harrison* as an insured to his insurance carrier were not discoverable, thereby precluding their use in cross examination during pre-trial depositions and at trial, as well as precluding their use in trial preparation when it appeared in testimony at trial that there was a conflict as to when and how frequently medical attention was sought by the Appellant.

"B. Whether the trial court erred in ruling that *reports prepared by Dr. Harrison* and furnished to a medical review panel investigating an alleged claim of medical malpractice were not discoverable, thereby precluding their use in cross examination during pre-trial depositions and at trial, as well as precluding their use in trial preparation when it appeared in testimony at trial that there was a conflict

as to when and how frequently medical attention was sought by the Appellant." (Emphasis added.)

Argument was presented to us and to the trial court as to each of these issues in two respects: (1) Were the reports protected from discovery by appellant because of an attorney-client privilege? and (2) Were they protected from such discovery as being the work product of appellee? The trial court ruled that protection existed on both grounds.

We affirm the judgment because protection from such discovery was afforded under the work product concept, i.e., we do not find an abuse of discretion by the trial court in its determination that appellant-plaintiff failed to show (1) a substantial need for the statements made by appellee-defendant to his insurance company or for the reports made by him to a medical review panel, and (2) that she was unable without undue hardship to obtain a substantial equivalent thereof by other means, as is required by Rule 26(b)(3), W.R.C.P.[1]

1. Following are the pertinent portions of Rule 26(b), W.R.C.P.:

"(b) Scope of discovery.—Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

"(1) In General.—Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence;

\* \* \* \* \* \*

"(3) Trial Preparation; Materials.—Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor,

insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation;

\* \* \* \* \* \*

"(4) Trial Preparation; Experts.—Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

"(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision

The trial court's ruling was in the form of a denial of appellant's motion for an order to compel discovery. The motion was made after the following interrogatories were posed by appellant to appellee and the following responses thereto were made by appellee:

"10. Have you made any statements to agents of your insurance company, or to any other person in relation to the incidents set forth in the Complaint filed herein? If so, please state the date said statement was given, the name of the person taking the statement, and the present location of such statement.

"ANSWER: No formal statements given though have had discussions with counsel and representatives of insurance company. Written statements dated February 23 and 24, 1977 were given to insurance carrier.

"11. Has any other physician, or panel of physicians reviewed this case and the treatment rendered by you therein, for any purpose whatsoever with a view toward determining the negligence or lack of negligence, or with a view toward critiquing the care provided by you. If so, please state the name of each such physician, or panel of physicians, when such review occurred, what, if any, reports were rendered as a result of such review of critiquing, and the present location of such reports.

"ANSWER: Yes, the panel was held in cooperation with the Wyoming State Medical Society, my attorneys and my insurance carrier. All information is work product and privilege is asserted."

Appellant's "Renewed Request for Production" was refused by appellee, and appellant then filed her motion to compel discovery.

The circumstances of this case are such that the determination of the propriety of the attempted discovery should be resolved on the basis of the failure of appellant to make the showing required by Rule 26(b)(3), W.R.C.P.[2] necessary to obtain work-product material. It is unnecessary to consider application of subsection (b)(4) of Rule 26[3] as it could pertain to obtaining "facts known and opinions held by experts," i.e. the medical review panel. The issues presented here on appeal have to do with statements and reports made by appellee. Although, in attempted discovery, appellant concerned herself with more aspects of the medical review panel than the reports of Dr. Harrison, the other aspects were not presented on appeal. Appellant words each of the issues on appeal, supra, as having to do with the "reports of Dr. Harrison."

The statements and reports sought by appellant are "documents and tangible things" which, if not privileged, are discoverable only under the conditions set forth in Rule 26(b)(3).[4]

▮ And it is upon consideration of this sub-subsection (Rule 26(b)(3)) as it pertains to the circumstances of this case that the trial court's ruling may be affirmed. Even if the statements to the insurance carrier were not privileged, they, and the reports furnished to the medical review panel, were "prepared in anticipation of litigation or for trial by or for * * * [appellee] or by or for * * * [appellee's] representative (including his attorney, *consultant*, surety, indemnitor, *insurer* or agent)" (emphasis added) as designated in Rule 26(b)(3).[5] Then, to be discoverable under the rule, two conditions must be met. One, it must be shown that the party seeking recovery "has substantial

---

(b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate; "(B) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to ob-

tain facts or opinions on the same subject by other means."

2. See footnote 1.

3. See footnote 1.

4. See footnote 1.

5. See footnote 1.

need of the materials in the preparation of his case," and two, that such party "is unable without undue hardship to obtain the substantial equivalent of the materials by other means." The trial court found that neither of these conditions were met by appellant. The findings were proper under the circumstances of this case.

■ As appellant states the issues here presented, supra, the alleged necessity for the discovery was triggered by the fact that "it appeared in testimony at trial that there was a conflict as to when and how frequently medical attention was sought by the Appellant." The record reflects a sound basis for the refusal of the trial court to find such to be sufficient to satisfy the two conditions for the requested discovery. The material could not have been in "preparation" of the case for trial if the triggering occurred at the trial. Nor does the record support a showing that "the substantial equivalent of the materials" could not, or was not, obtained "without undue hardship."

In truth, the times and frequency of the medical treatment (the information desired by appellant) were detailed by appellant in her testimony. A written chronology of such as prepared by her was introduced into evidence. Hospital records and appellee's office records were referred to and placed in evidence. The testimony was to the effect that appellant fell on March 11, 1976, and broke her arm. She went to the emergency room of the hospital where the break was set and a cast was placed on her arm by James Hooker, a medical assistant. Appellee first visited her the next day in the hospital. During the following month, appellant suffered pain with the arm and her fingers were swollen and discolored. She had several contacts, by telephone and in person, with James Hooker and appellee because of the pain. Appellee prescribed medicine for her, and the cast was trimmed and split about six times. It was replaced

once by appellee. On April 14, 1976, appellant went to Hill Air Force Base where she consulted a Dr. Harold Jenson who arranged an appointment with an orthopedic surgeon, Dr. Adams. She subsequently received treatment at Hill Air Force Base, and, on July 27, 1976, Dr. Adams performed surgery on her arm to decompress the median nerve.

The only disagreement between appellant and appellee in their testimony [6] was in three respects: (1) Appellant testified to a number of telephone calls to appellee. Appellee could not recall all of them. Appellant's testimony was therefore unchallenged in this respect. (2) Appellant testified that Dr. Jenson prepared a note for appellee in which he suggested a course of treatment pending the operation including stellate blocks and that she communicated this information orally to appellee and also delivered the note to him. Appellee testified that he did not receive the information or the note. However, appellant testified that appellee stated he would not use the treatment anyway, inasmuch as "we don't do it that way." (3) Appellee testified that, on April 8, 1976, during a visit by appellant and her husband to his office (the last time appellee said he had contact with appellant) appellee told the husband that he didn't understand why appellant was still having pain and that she should see an orthopod. Appellant and her husband denied that appellee had recommended a consultation with an orthopod. They said that the contact with physicians at Hill Air Force Base was on April 13, 1976, and that their last contact with appellee was on April 11, 1976.[7]

Whether or not the referral to an orthopod was by appellee and whether appellant's last contact with appellee was on April 8 or on April 11, 1976, an appointment was nonetheless made on April 13, 1976 for appellant to go to Hill Air Force Base Hospital on April 14, 1976, where she was examined by Dr. Jenson who referred her to Dr. Adams, an orthopedic surgeon.

6. Appellant did not designate the testimony of Drs. Jenson and Adams to be part of the record on appeal.

7. Appellant was hospitalized in Salt Lake City, Utah on May 3, 1976 and eventually underwent surgery there.

■ It is possible that the reports made by appellee to his insurer and the statements made by him to the medical review panel may have been at variance with his testimony relative to times and frequencies of medical treatment afforded appellant. But mere possibility or surmise in this respect does not constitute the showing of need required by Rule 26(b)(3).

"* * * [A]lthough a party is entitled to production of documents that would be useful to impeach a witness, his mere surmise that he might find impeaching matter has been held not sufficient to justify production. * * *" 8 Wright and Miller, Federal Practice and Procedure: Civil § 2025, pp. 226–227.

If the mere potential or possibility that the documents contained impeaching material were sufficient to warrant production, the conditions for production set forth in Rule 26(b)(3) would be meaningless. Any effort at discovery would be said to have a possible impeachment purpose. *Stephens Produce Co., Inc. v. National Labor Relations Board*, 515 F.2d 1373 (8th Cir. 1975).

Appellant had the equivalent of appellee's statement and report relative to the times and frequencies of medical treatment afforded appellant. She had her own recollections thereof and the written chronology prepared by her. She had the hospital records and appellee's office records. She had appellee's deposition and she had his trial testimony which was subjected to cross-examination. There was no showing by appellant of a substantial need for the statement and report for preparation of her case, or that she was unable to obtain the substantial equivalent thereof by other means without undue hardship. The trial court so found.

"While some showing of necessity in the interest of justice over and beyond the fact that the material is relevant and not privileged has clearly been necessary to productions of documents, certainly the courts have exercised quite broad discretion in the application of Rule 34.[8] Un-

der Rule 26(b)(3), they will continue to do so. Each case will be determined on its peculiar facts. Under the Rule as presently worded the factors to be taken into account in the exercise of the district court's discretion the importance of the information sought in the preparation of the case of the party seeking it, and the difficulty it will face in obtaining substantially equivalent information from other sources if production is denied. * * *" 4 Moore's Federal Practice, § 26.64[3], pp. 26–419, 26–421.

See *United States v. Chatham City Corporation*, 72 F.R.D. 640 (S.D.Ga. 1976); *Miles v. Bell Helicopter Co.*, 385 F.Supp. 1029 (N.D.Ga. 1974); *Burlington Industries v. Exxon Corporation*, 65 F.R.D. 26 (D.Md. 1974); *Stephens Produce Co. v. N.L.R.B.*, supra.

The trial court's ruling in this instance did not exceed the bounds of reason under the circumstances.

"A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances. * * *" *Martinez v. State*, Wyo., 611 P.2d 831, 838 (1980).

■ Although the issues presented on this appeal do not encompass that of whether or not the results of the medical review panel utilized by appellee are subject to discovery, we are aware of the practice used by many attorneys in evaluation of their cases to inquire of a stenographer, an elevator operator, a barber, and other contacts concerning their estimation of damages which they would award under given circumstances, or their determination of liability of parties under given circumstances. Such is a form of work product and not subject to discovery. A medical review

---

**8.** Prior to the 1970 revision of the Federal Rules of Civil Procedure, Rule 34 thereof required a good cause showing for production of any document.

panel is in the same category. The record does not reflect whether or not appellant also organized a medical review panel and presented the situation to it in evaluation of the merits of her position.

■ The trial court's finding that there was an attorney-client privilege with respect to the reports and statements made to the insurer by appellee was in accord with the general proposition as stated in Annotation: Privilege of communications or reports between liability or indemnity insurer and insured, 22 A.L.R.2d 659.

"According to the weight of authority, a report or other communication made by an insured to his liability insurance company, concerning an event which may be made the basis of a claim against him covered by the policy, is a privileged communication, as being between attorney and client, if the policy requires the company to defend him through its attorney, and the communication is intended for the information or assistance of the attorney in so defending him." 22 A.L.R.2d 660, § 2.

Supporting cases were cited in it and its supplements from California, Colorado, England, Florida, Illinois, Missouri, Nebraska, New Jersey, New York, Ohio, Tennessee and Texas. Typical of the rationale for this position is that stated in *Hollien v. Kaye*, 194 Misc. 821, 87 N.Y.S.2d 782, 785 (1949):

"The statements of these defendants were intended as a communication by them to the attorney ultimately to be retained for them by the carrier, under their contract. The delivery of the statements by these defendants to the carrier's representative, whether he be layman or lawyer constitutes the carrier and such representative the agent of defendants, to transmit such statements to their attorney when he has been selected and retained by the carrier.

"The fact that defendants did not select their own counsel is of no moment. They had a contract, for which they paid a valuable consideration, which obligated the carrier to provide them with counsel. The carrier stood in the position of an agent of these defendants to select and retain their attorney for them."

The dissenting opinion is in accord with the Wisconsin court, and it adequately sets forth the rationale used by that court in the proposition that statements by the insured to his insurance carrier are not within the attorney-client privilege.

■ The circumstances of this case do not warrant any departure from the position of the majority of the courts. The information was furnished to the insurance carrier in full expectation that it was being furnished to an agent of the attorney who would defend appellee in this instance. The prime purpose for which one purchases liability insurance is to acquire protection against liability for the covered occurrences.

Of course, if the privilege exists, inquiry into application of additional provisions of Rule 26(b) is unnecessary. The rule provides that discovery may be had "regarding any matter, *not* privileged" (emphasis added) and then sets forth certain instances in which matters not privileged may be discovered *only* if certain conditions are met.

Affirmed.

RAPER, Justice, concurring.

I concur in every respect with the opinion of the majority. I only add an expression of alarm if the court should do otherwise. To go in any different direction would dangerously encroach upon the attorney-client privilege so jealously guarded by the language of Rule 26(b)(1), W.R.C.P., by Rule 501, W.R.E. and § 1–12–101(a)(i), W.S.1977, so necessary for a satisfactory relationship, in that it would discourage honesty by a client to his attorney and intrude upon the right of privacy between a lawyer and his client. It must not be forgotten that the privilege is not only for defendants but for plaintiffs as well and could well be a two-edged sword if chipping away at its sanctity is permitted.

To not consider use of a medical review panel as an attorney's work product would discourage his search for the truth and tend to daunt settlement of cases if the review

should prove to be discouraging to the position of the client. An embarrassing and expensive trial might thus be avoided. Plaintiff's attorneys have no exclusive claim to the difficulties and hardships of preparing for malpractice litigation. Defendant's attorneys have problems of equal magnitude.

ROSE, Chief Justice, dissenting, with whom THOMAS, Justice, joins in part.

As the majority opinion notes, this appeal came on for review as a result of a district court order which dismissed appellant's motion to compel discovery. The majority upholds this order utilizing Rule 26(b)(3), W.R.C.P. as authority. Because it is my belief that the majority opinion has laid the groundwork for the future erosion of our policy of open and full discovery, which policy permeated the adoption of the Wyoming Rules of Civil Procedure, I find it necessary to dissent. For the reasons discussed below, I would have reversed this case and remanded for a new trial.

## INTRODUCTION

My principal disagreement with the majority opinion pertains to the conclusion that Dr. Harrison's statements to his insurer were protected under the attorney-client privilege. Not only do I have trouble with the conclusion, but I am also bothered by the fact that the majority also concludes that the statements were protected by Rule 26(b)(3), W.R.C.P. The interesting aspect of the majority opinion is that it notes that if a matter is privileged under Rule 26(b)(1), then inquiry into application of additional Rule 26(b) provisions is unnecessary, yet it does just that in reverse order. First, the majority concludes that the statements to the insured were protected under work product and then concludes that those same statements were privileged. Basically, the majority opinion addresses that which, in its own words, "is unnecessary" to address. My reason for discussing the Rule 26(b)(3) question in relation to Dr. Harrison's statements to his insurer relates to my conclusion that the statements were not privi-

leged. This, in my opinion, is the proper application of Rule 26(b), W.R.C.P.

I must also disagree with the majority's reasoning and conclusions which hold that the statements of Dr. Harrison to his insurance carrier and the reports of the medical review panel are protected from discovery under the work-product exception embodied in Rule 26(b)(3), W.R.C.P. My disagreement comes from the fact that I believe the appellant in this case has made the requisite showing of need required under the provisions of the rule. I reach this conclusion because the record reflects substantial evidence of failure on the part of appellant to discover necessary information for the preparation of her case. The appellee's memory of the events leading up to the claim was either totally lacking, or was very sketchy, as evidenced by the answers in his deposition. Also, it is apparent that if Dr. Harrison's memory was fresh at any time it was when he gave the statements to his insurance carrier long before the complaint in this case was filed. To me these factors do not amount to surmise on the part of the appellant that the information she sought to discover would be different; rather it reflects a showing of substantial need on her part for the information in order to prepare her case. The majority states that the appellant had the equivalent of the material sought to be discovered because she had been able to compile her own chronological lists of her visits with Dr. Harrison, and such list was admitted into evidence. In my judgment, this conclusion by the majority is bottomed in conjecture and surmise when it is remembered that appellant never was permitted to compare her memory of the events with Dr. Harrison's because she was precluded from discovering the materials necessary for such a comparison.

In addition, I feel that the majority opinion has misstated what the appellant was seeking to discover in relation to the medical review panel. The majority concludes that the issues in this case do not encompass the question of whether or not the results of the medical review panel utilized by appellee are subject to discovery. The jurists

comprising the majority base this conclusion on a finding that, in her brief, the appellant framed the issue in terms of discovering only reports prepared by Dr. Harrison for use before the review panel. I believe that the issue of what the appellant desired to discover as to the review panel should be framed in terms of what she asked to discover below. This can easily be determined by referring to her Interrogatory Number 11 which read:

"11. Has any other physician, or panel of physicians reviewed this case and the treatment rendered by you therein, for any purpose whatsoever with a view toward determining the negligence or lack of negligence, or with a view toward critiquing the care provided by you. *If so, please state the name of each such physician, or panel of physicians, when such review occurred, what, if any, reports were rendered as a result of such review or critiquing, and the present location of such reports.*" (Emphasis added.)

To me, the appellant was clearly seeking to discover not only the names of the physicians who participated in the panel, but also the reports, if any, that were issued by the panel. This request is what the trial court refused to allow and it is difficult to perceive how the language of that request could be read any differently. It follows from the above conclusion that in order to properly address the issue surrounding the review panel, it was incumbent upon the majority to discuss Rule 26(b)(4), W.R.C.P. This position is strengthened by the fact that since appellant requested the names of the doctors on the panel, then, in order to determine the propriety of such a request, Rule 26(b)(4) must be consulted, because it governs attempts by a party to discover information concerning his adversary's experts. And since in my view Rule 26(b)(4)

was at issue, it should out of necessity have been addressed by the majority since Rule 26(b)(3), W.R.C.P. is subject to its terms.[1] Based on these factors I feel compelled to address the Rule 26(b)(4) question and will do so in this dissent.

Finally, I am disturbed with the approach of the majority which seems to suggest that the appellant in this case failed to satisfy Rule 26(b)(3) because she herself obviously made no attempt to assemble her own medical review panel. Such a conclusion, at least for me, is anomalous in light of the difficult position any plaintiff faces when pursuing a malpractice case. I am sure that any practicing attorney in this state who has represented a plaintiff in a malpractice suit is familiar with the difficulties faced in preparing for such litigation. I am not able to contemplate a situation in a malpractice case in which a plaintiff could assemble a group of doctors from any given locale for the purpose of reviewing a claim which is being brought against one of the members of the local medical profession. From any realistic point of view it should be conceded that such a task would be impossible. Even if the impossible could be accomplished, it could only be done at astronomical expense. To hold the plaintiff in this case to such a burden in itself establishes a prime example of such "undue hardship" as was contemplated by the framers of Rule 26(b)(3).

Considering the above comments, I would have addressed this appeal in the following manner.

## ARE THE STATEMENTS PROTECTED FROM DISCOVERY BY THE ATTORNEY–CLIENT PRIVILEGE?

Under § 1–12–101(a)(i), W.S.1977,[2] communications made by a client to his attor-

1. A portion of Rule 26(b)(3), W.R.C.P. provides:

"(3) Trial Preparation; Materials.—Subject to the provisions of subdivision (b)(4) of this rule * * *."

2. Section 1–12–101(a)(i), W.S.1977, reads:

"(a) *The following persons shall not testify in certain respects:*

"(i) *An attorney* or a physician concerning a communication *made to him by his client or patient in that relation, or his advice to his client or patient. The attorney* or physician *may testify by express consent of the client* or patient, *and if the client* or patient *voluntarily testifies the attorney* or physician *may be compelled to testify on the same subject;*" (Emphasis added.)

ney and those embodying advice from an attorney to his client are protected from disclosure unless such protection is waived by the client. This section sets out the Wyoming version of attorney-client privilege. Since passage of the Federal Rules of Civil Procedure, after which the Wyoming Rules of Civil Procedure are modeled, the scope of the attorney-client privilege has been a subject of great concern. The main reason for the concern is that the rules are designed to embody liberal discovery while the privilege acts as a bar to discovery.[3]

Since the attorney-client privilege acts as an absolute bar to discovery or disclosure, it has been suggested that it should be limited to its traditional contours. 8 Wright & Miller, Federal Practice and Procedure: Civil, § 2017. Such traditional contours are those described in § 1–12–101, supra. Generally, it is assumed that communications between a client and a third party or one who is not a lawyer are not protected; however, the privilege will not be lost if the client communicates to one who is an agent of his attorney. McCormick on Evidence, § 91 (2d ed. 1972). Obviously, in this case the agent of Dr. Harrison's insurance company qualifies as a third party; thus in order for the privilege to apply he must be deemed an agent for the attorney whom the insurer later employs. This has been the approach of the cases holding that statements to a party's insurance company are protected under the attorney-client privilege. Many of the courts dealing with this issue have held that if the statement made by an insured to his insurer concerns an event which may be made the basis of a claim against him, and the claim is covered by the policy, then such statement is a privileged communication under the attorney-client privilege as long as the policy requires the company to defend and the communication is intended for the use of an attorney selected to defend the claim. See Annot., 22 A.L.R.2d 659. Instructive on this approach is a recent holding of the Nebraska Supreme Court.

In *Brakhage v. Graff*, 190 Neb. 53, 206 N.W.2d 45 (1973), the Nebraska Supreme Court found that statements made by a defendant, in an automobile accident suit, to her insurance company were protected because the insurance company was deemed the agent of an attorney later selected to handle the insured's case. The court also stated that the fact that the statement was made to a field claims agent and not to an attorney was not controlling. 206 N.W.2d at 48. A similar approach has also been followed by the Colorado Supreme Court in the case of *Bellmann v. District Court in and for the County of Arapahoe in the Eighteenth Judicial District*, 187 Colo. 350, 531 P.2d 632 (1975). These decisions conclude that statements by an insured to his insurance company are privileged as long as the policy requires the company to defend any claims brought against the insured that are covered by the policy.

I feel, however, that the rule expressed in the above cases extends the attorney-client privilege into areas it was never intended to apply. Although the privilege clearly applies to some communications that are made to agents of an attorney, the agents referred to are not indemnity insurers but rather are stenographers, secretaries, and investigators employed directly by the attorney. *McCormick on Evidence*, supra.

The better approach to this question was discussed in the case of *Jacobi v. Podevels*, 23 Wis.2d 152, 127 N.W.2d 73 (1964). There it was held that statements by an insured to his insurance carrier cannot be viewed as statements solely designed for the preparation of a defense to a claim. Rather, such statements are given by the insured in order to satisfy a condition in his policy and also to allow the insurer to determine adjustments, or to determine whether the insured's actions are even covered by the policy. 127 N.W.2d at 75–76. The conclusion was that the statements contained too many other elements to allow them to be

---

**3.** Under our decision in *Barber v. State Highway Commission*, 80 Wyo. 340, 342 P.2d 723, 726–727 (1959), we said that the Wyoming

Rules of Civil Procedure favor full and fair disclosure at the discovery stage.

considered a statement by a client to his attorney. The fact that the insurance company is the first party to utilize the statements is inconsistent with the idea that they are privileged communications between an attorney and a client.

The approach taken by the Wisconsin court is persuasive, and the better view is to consider a statement made by an insured to his insurance company to be in the ordinary course of the company's business and, thus, not protected by the attorney-client privilege. This rule does not preclude from protection statements made to those who are truly agents of an attorney, meaning those subject to his direct control such as a secretary or stenographer. Dr. Harrison's insurance carrier cannot be considered an agent since in this case counsel for Dr. Harrison was not yet hired. His statements to the insurer were made in the ordinary course of business and were not protected by the attorney-client privilege.

Although appellee does not claim in his brief that the statements, documents or reports submitted to the medical review board were privileged under the attorney-client privilege, since the trial court held they were it becomes necessary to address this issue.

Basically, the trial court felt that the mere presence of appellee's attorney during the "hearing" in front of the medical review panel was enough in and of itself to establish application of the attorney-client privilege. I cannot agree. In finding that the privilege applied, the trial court cited the following passage from McCormick on Evidence, supra, ¶ 91 at 189–190:

> "Moreover, in cases where the client has one of his agents attend the conference, or the lawyer calls in his clerk or confidential secretary, the presence of these intermediaries will be assumed not to militate against the confidential nature of the consultation, and presumably this would not be made to depend upon whether the presence of the agent, clerk or secretary was in the particular instance reasonably necessary to the matter in hand. It is the way business is gener-

ally done and that is enough. As to relatives and friends of the client, the results of the cases are not consistent, but it seems that here not only might it be asked whether the client reasonably understood the conference to be confidential but also whether the presence of the relative or friend was reasonably necessary for the protection of the client's interests in the particular circumstances."

This does not seem to suggest that the mere presence of an attorney protects the privilege when any third party is present, but rather it suggests that whenever a third party is present, except the lawyer's agents discussed earlier, a question arises whether the privilege exists at all. The quoted passage even suggests that the presence of a client's relative may destroy the privilege. In light of this I cannot find that the statements made by Dr. Harrison to an uninterested and independent review panel are protected by the attorney-client privilege. It is the nature of the third party that controls, not the fact that Dr. Harrison's attorney was also present.

## ARE THE STATEMENTS PROTECTED FROM DISCOVERY BY THE WORK–PRODUCT DOCTRINE?

The more difficult issue in this appeal pertains to the claim of the appellee that his statements to the insurance carrier and to the medical review panel are all protected from discovery by application of the work-product doctrine. As the majority opinion notes, the work-product doctrine is embodied in Rule 26(b)(3), W.R.C.P.; the language of that rule is in pertinent part as follows:

> "(3) Trial Preparation; Materials.—Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) *only upon a showing that the par-*

*ty seeking discovery has substantial need of the materials* in the preparation of his case *and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.* In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation;" (Emphasis added.)

Although this rule specifically mentions that materials prepared by a party's insurer in preparation of litigation or for trial are not discoverable unless the party seeking discovery makes the requisite showing of need, the first requirement that must be met under the rule is that the materials be prepared in anticipation of litigation or for trial. Based on my conclusion that the statements by the insured to his insurance company were made in the ordinary course of business, it would be inconsistent to also hold that such statements are made in anticipation of litigation. This was the exact issue to come before the Kansas Supreme Court in *Henry Enterprises, Inc. v. Smith,* 225 Kan. 615, 592 P.2d 915 (1979). There it was held that Rule 26(b)(3)[4] was not designed to insulate insurance companies merely because they constantly deal with potential claims. *Henry Enterprises, Inc. v. Smith,* 592 P.2d at 919, citing from *Thomas Organ Co. v. Jadranska Slobodna Plovidba,* D.C.N.D.Ill., 54 F.R.D. 367 (1972). The court felt that the majority of cases had held that

" * * * unless the investigation made by an insurance carrier has been at the request or under the guidance of counsel, the investigation is conclusively presumed to have been made in the ordinary course of business and not in anticipation of litigation or in preperation for trial." 592 P.2d at 920.

Since the statements made by Dr. Harrison to his insurance carrier were made some 15 months before appellant Thomas filed her original complaint and before counsel was hired, they were not prepared in anticipation of litigation. Thus a prerequisite of Rule 26(b)(3), W.R.C.P., has not been satisfied.

Although I am vitally concerned with the position of physicians in relation to malpractice claims and also their relationships with their insurance carriers, it is also important, as previously noted, to consider the difficulties which confront plaintiffs as they attempt to obtain adequate information to prepare their cases. To hold as nondiscoverable statements made by a doctor to his insurance company before a suit is filed and before any counsel is retained, unduly burdens the plaintiff's preparation for trial. See Annot., 15 A.L.R.3d 1446, and *Rogotzki v. Schept,* 91 N.J.Super. 135, 219 A.2d 426 (1966).

Turning to the statements made by Dr. Harrison before the medical review board, I conclude that the work-product doctrine does apply. It is apparent from the facts that the review panel was organized at the request of Dr. Harrison's insurer, and also for the purpose of ascertaining whether or not the doctor's care of his patient was adequate and proper. In addition, at the time the panel was convened, counsel had been retained and he was also present when the panel met. I, therefore, have little doubt that the review panel was intended to assist the doctor's lawyer in the preparation of litigation and for trial. Thus, under Rule 26(b)(3), W.R.C.P., unless the appellant proved that she had substantial need of the reports from the panel in the preparation of her case and that she was unable without undue hardship to obtain the substantial equivalent of these reports by other means, she was not entitled to discover under Rule 26(b)(1).

Given the facts of record, it is clear that these reports were important for the preparation of the appellant's case. Earlier in this opinion, I stressed my concern for the difficult position in which plaintiffs in malpractice suits find themselves. Essentially,

---

4. The Kansas rule is identical to Rule 26(b)(3), W.R.C.P.

a malpractice suit amounts to a layman challenging a qualified expert, namely a defendant's physician. *Rogotzki v. Schept,* supra. The New Jersey Superior Court in that case described this difficulty:

"Where the expert testimony of a defendant doctor is brought into issue as a result of his exercise of expert judgment, pretrial discovery relating to his opinion and exercise of judgment in the course of treating his patient is no different from any case in which an adverse party has knowledge of relevant matters, to hold otherwise would, particularly in a medical malpractice case, put a plaintiff to a disadvantage." 219 A.2d at 436.

In the case at bar the appellant was seeking discovery of the facts brought to light in the interchange between Dr. Harrison and the review panel. It was important for her to be able to ascertain what those facts were, and what was said at that meeting. Although the appellant claims that she desired the information for the purpose of impeaching Dr. Harrison, that was not her only purpose in seeking this information. The materials were also essential to preparation of her case as a whole. For, as the majority notes, if the appellant's only claim was that she thought the reports might contain information that could be used to impeach Dr. Harrison, it would not amount to a sufficient showing under the rule. 4 Moore's Federal Practice, ¶ 26.64[3]. However, the central issue in this case was the amount and nature of the care provided the appellant by Dr. Harrison. A major discrepancy in the facts arose as to when the appellant was treated by Dr. Harrison and what treatment was prescribed by him at that time. Additionally, the facts show that Dr. Harrison was not very clear as to the dates and nature of his treatment either in his depositions or at trial. Thus, the only way for appellant to know what occurred at the meeting before the review panel was to obtain possession of such materials as were a product of the meeting.

In this case, the appellee in his answer to appellant's interrogatory precluded discovery of the information by other means, simply by refusing to ever tell the appellant where any reports were or even who the doctors sitting on the panel were.

In light of this, I conclude that under the facts of this case the appellant has made the requisite showing under Rule 26(b)(3), supra, and that the trial court erred in not allowing discovery of the materials arising from the meeting with the review panel under Rule 26(b)(1), supra.

### WERE THE REPORTS FROM THE MEDICAL REVIEW PANEL NOT DISCOVERABLE UNDER RULE 26(b)(4), W.R.C.P.?

The appellee further claims that the materials arising from the medical review panel are protected from discovery under Rule 26(b)(4)(B), W.R.C.P., which provides:

"(4) Trial Preparation; Experts.—Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, *may be obtained* only as follows:

\*  \*  \*  \*  \*  \*

"(B) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of *exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means;*" (Emphasis added.)

This rule is intended to preclude a party from obtaining information from an expert witness who was specially hired by an opposing party but who is not going to testify at trial. According to Professors Wright and Miller, the rule was designed to protect information acquired from an expert by a party at his own expense, but only when such expert testimony is not indispensable for trial. 8 Wright & Miller, Federal Practice and Procedure, Civil: § 2032. Thus the rule is designed to protect such information because it is assumed that the party seeking

disclosure can obtain the same type of information from some other expert in the field. The present facts do not present the situations considered by the drafters. Here there was no other way for the appellant to know what went on before the review panel unless she could obtain the reports arising therefrom. Additionally, under Rule 26(b)(4)(B), she was at least entitled to the names of the physicians sitting on the panel.[5] Only those doctors sitting on the panel knew what was said and this information could be acquired in no other way. Thus, I conclude that Rule 26(b)(4) was not designed to apply to the present situation, and the reports were not protected from discovery under its provisions.

## CONCLUSION

I believe my approach to this case is the only way this court can further the policy of full and fair disclosure embodied in the Wyoming Rules of Civil Procedure. My grave and substantial misgivings brought on by the majority's opinion have necessitated my filing this dissent.

THOMAS, Justice, concurring in part and dissenting in part.

I am persuaded that whether the statements made to and the product of the medical review panel are subject to discovery is a matter best left to the exercise of discretion by the trial court. Since I can find no abuse of that discretion in this instance, I concur in the aspect of the majority opinion holding that those matters are protected as work product of the attorney and did not have to be disclosed.

I agree most firmly, however, with the views set forth by Chief Justice Rose in his dissenting opinion with respect to the privilege which the majority opinion extends to the statements made to the agent of the insurance company. I therefore join in that aspect of his dissenting opinion, adding these brief comments of my own.

Truth and justice are the Siamese twins of the legal craft. They are inseparable

and wholly intertwined. One cannot survive without the other, and any deleterious impact upon either serves to affect the health and well-being of both.

The only effect that I am able to perceive of extending the attorney-client privilege to statements made by an insured to adjustors or other representatives of his insurance company, which are required to be made by the cooperation clause in the insurance policy, is that the extension of the privilege inhibits the search for the truth. To the extent that the truth remains obscured by virtue of such rule, justice indubitably suffers. The attorney-client privilege in its historical development does not appear to be designed to reach this situation. The history with respect to the development of the privilege seems to relate primarily to the protection of the right of the individual not to be a witness against himself. In modern civil cases, however, he cannot claim such a right, and as McCormick remarks:

> " * * * Now, however, when the party knows that he himself can be called as a witness by the adversary, the danger from disclosure to counsel is less important." McCormick on Evidence, § 87, p. 176 (West Publishing Co. 1972).

Given this state of jurisprudence, while our tradition undoubtedly will continue to protect the privilege between clients and attorneys, I see no purpose in extending it beyond that particular relationship even by legal fiction.

To me it seems more important that we should be searching for the truth in instances such as this rather than structuring an inhibition to that search for truth. It is clear that protecting the statements made by an insured to his insurance company or its agents or representatives, under the guise of the attorney-client privilege, will assist those who are so inclined to adjust their version of operative events to their advantage, without regard to what they might have told their insurance carrier. On the other hand, to those who are not so

5. This suggestion is made in Wright & Miller, § 2032, cited above, and I deem this interpreta- tion applicable to our rule which is identical to the federal rule.

inclined it cannot possibly make any difference that this tool also is available in identifying the truth that leads to a just result.